**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

LOGAN BACHSTEIN, an individual,

Plaintiff(s),

v.

DISCORD, INC., a for-profit corporation,

Defendant(s).

CIVIL ACTION NO.: 6:19-cv-1484

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**COMES NOW**, Plaintiff, LOGAN BACHSTEIN ("Plaintiff"), by and through undersigned counsel, hereby sues Defendant, Discord, Inc., ("Discord"), for all legal permissible damages and equitable relief. In support thereof, Plaintiff alleges as follows:

### PRELIMINARY STATEMENT

1. Discord is as a freeware voice over internet application and digital distribution platform that was initially designed for the video gaming back in 2011. Users could freely and easily communicate over the platform, while playing their favorite online games.

2. From its early origins in the video gaming community, Discord has grown and morphed into a platform that has many different forums and chatrooms covering a wide array of topics, including stock trading, markets, fantasy football, cryptocurrency, and other shared interest.

3. Discord was finally released to the public in May of 2015. Within a span of less than three years since its release, Discord was valued at over $2 billion dollars and counts over 250 million users on its platform as of May 2019.[1]

[1] *See* https://techcrunch.com/2018/12/21/gaming-chat-startup-discord-raises-150m-surpassing-2b-valuation/ and https://www.techspot.com/news/80064-discord-has-surpassed-250-million-registered-users.html (lasted visited Aug. 2, 2019).

4. However, Discord's rapid and explosive growth has not come without a price. Discord has allowed its platform to become overrun with users intent on committing crimes.

5. Examples of the type of activity discord has failed to curtail or even address include bullying, child pornography, neo-Nazi groups, selling of stolen merchandise, revenge porn, photographs of mutilated corpses, harassment, and other abusive behavior.[2]

6. What makes matters worse is that Discord's own site moderators have in the past failed to implement or enforce the platform's terms of service or code of conduct.[3]

7. Discord has failed to take any efforts whatsoever to address or curtail this type behavior, thereby creating an environment where theft and other types of crimes are allowed to flourish on its platform. Due to this failure, Discord's moderator was able to misappropriate 23 bitcoins from the Plaintiff.

8. The misappropriation of Plaintiff's property was both foreseeable and preventable by Discord if it had simply enforced its own terms of service and community guidelines. As a direct and proximate result of Discord's failure to monitor and moderate its own moderators Plaintiff suffered damages and hereby seeks any and all damages compensable under Florida and federal law.

## PARTIES, JURISDICTION, AND VENUE

9. Plaintiff is a natural person currently domiciled in Orlando, Florida and is *sui juris.*

10. Defendant, Discord is a foreign for-profit corporation with its principal place of business in San Francisco, CA.

---

[2] *See e.g.* https://www.cnet.com/news/instagrams-dark-side-grisly-photos-of-teens-slaying-spread-on-social-media/ ; https://gizmodo.com/how-a-video-game-chat-client-became-the-web-s-new-cessp-1792039566 ; and https://www.nytimes.com/2017/08/15/technology/discord-chat-app-alt-right.html (all lasted visited Aug. 5, 2019).

[3] *See e.g.* https://www.newsweek.com/discord-furries-terms-service-community-guidelines-1323099 (last visited Aug. 5, 2019).

11. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) exclusive of interest and costs, and the controversy is between citizens of different States. *See* 28 U.S.C. § 1332(a)(1).

12. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13. The Court has personal jurisdiction over Defendants because they committed a tortious act and caused injury to Plaintiff within this District. *See* Fla. Stat. § 48.193.

14. Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this District.

15. In light of the foregoing, this District is a proper venue in which to adjudicate this dispute.

## GENERAL ALLEGATIONS

### BACKGROUND

16. Beginning in 2016, Plaintiff began purchasing Bitcoin ("BTC") as a place to invest some of earnings from his job as a bell-hop at Walt Disney World. He developed an interest in alternative platforms and cryptocurrencies, such as BTC, after his parents lost their home.

17. In 2017, Plaintiff joined a chatroom online called "Premium Signals", which was hosted and owned by Discord. Individuals would meet in this chatroom to engage in conversation over their shared interest in Bitcoin, cryptocurrencies, and distributed ledger technology.

18. The Premium Signals chatroom was administered and facilitated by a moderator as was the case with all of Discord's other chatrooms. A moderator's duties might range from introducing discussion topics, facilitating ongoing discussions, reviewing links published in the

chatroom, notifying administrators about abusive or disruptive chatroom members, and enforcing Discord's community rules and guidelines.

19. As a result of the position afforded to them by Discord, moderators wield a significant amount of trust, power, and credibility amongst the members of the chatroom.

20. An individual known by the username, Duke, served as a moderator of Discord's Premium Signals chatroom.

21. Prior to becoming a moderator of the Premium Signals chatroom Duke, was known by the username "p1l0t (p-one-l-zero-t)".

22. At the insistence of one of the administrators for the Premium Signals chatroom, "p1l0t (p-one-l-zero-t)" changed his username to Duke. The administrator asked for the username change, because Duke would be joining the Premium Signals chatroom as a moderator and needed a simpler username that would be more accessible to chatroom members.

23. Duke obliged with Discord's administrators request and became a moderator for the Premium Signals chatroom.

24. After being an active participant in the Premium Signals chatroom for almost a year Plaintiff had developed a certainly familiar and comfort with Duke. Couple this with the fact that Duke had been given a position of authority by Discord as a moderator of the chatroom.

25. Specifically, under Discord's terms of service and guidelines, moderators such as Duke are responsible for ensuring that other members of the chatroom do not violate community rules.

26. This title and position bestowed upon Duke as moderator by Discord, gave Plaintiff the impression that he could trust Duke.

27. As such, in June 2018, when Plaintiff sought troubleshooting advice from Discord's Premium Signals chatroom he felt at ease when Duke had responded to his request.

28. Plaintiff needed assistance gaining access to electronic currency stored within his digital wallet. As explained further below, Plaintiff was entitled to certain electronic currencies simply because he owned another electronic currency, Bitcoin ("BTC").

29. Through Discord's chat, Duke offered to remotely access Plaintiff's computer to help him access the other electronic currencies contained in his digital wallet.

30. Rather than do as he said, though, Duke accessed the BTC stored in Plaintiff's digital wallet – 22.97346775 in total – and transferred it to Duke's own digital wallet.

31. In short, Duke wrongfully misappropriated approximately 23 BTC with a market value, at the time of the misappropriation, of approximately ONE HUNDRED SEVENTY-SEVEN THOUSAND DOLLARS ($177,000.00). [4]

32. Prior to Duke's theft, Plaintiff intended to use his BTC to pay for his wedding, pay for the down payment on a matrimonial home, and to help his father in-law establish a church.

33. However, Duke's misappropriation of Plaintiff's BTC and Discord's failure to take reasonable measures to prevent this type of conduct by its moderators forced Plaintiff to suffer compensatory damages and severe financial hardships.

**BITCOIN FORKS**

34. "Forks" are the impetus behind Duke's misappropriation of Plaintiff's ~23 BTC. In the context of this case, forks refer to the forking of the Bitcoin network, where one or more networks fork off of a common ancestor.

---

[4] On June 7, 2018, BTC had a market value of $7,711.17 per BTC. *See* https://coinmarketcap.com/currencies/bitcoin/ (last visited Aug. 6, 2019).

35. In recent years, developers have endeavored to create new cryptocurrencies to improve upon Bitcoin's perceived shortcomings. These new cryptocurrencies are variations of Bitcoin that allow for more transactions into a single block or offer other improvements on the original Bitcoin blockchain.

36. The developers of this new Bitcoin cryptocurrency have created a fork through which the original Bitcoin blockchain is divided into two distinct identical copies, (1) original Bitcoin and 2) new Bitcoin. With the creation of the new Bitcoin comes a new cryptocurrency that has its own value.

37. For example, Bitcoin Cash ("BCH") was a new Bitcoin fork created in 2017. It is the fourth largest cryptocurrency by market capitalization at approximately $5.8 billion.[5] BCH purports to serve as a network that can settle more transactions at faster speeds for lower costs than the BTC network.

38. Developers have forked the original Bitcoin network countless times; thus, creating thousands of new Bitcoin cryptocurrencies with their own value.

39. As stated above, when developers create or "fork" new cryptocurrencies, such as BCH, they are entitled to redeem a corresponding share of these newly-created cryptocurrency.

40. The following chart is an illustration of what occurs when a new cryptocurrency is forked. Here, a holder begins with one BTC:

---

[5] *See* https://coinmarketcap.com/currencies/bitcoin-cash/ (last visited Aug. 2, 2019).



41. In the above example, a holder began with holding one BTC. At the third block, developers create the BCH fork. As a result, for every one BTC held by the holder, the holder *is entitled* to collect one corresponding BCH. Since the holder has one BTC, at the time of the fork, the holder *is entitled* to one BCH. Later on in our example, the holder has two BTC, and the holder still has the one BCH. At that time, the BTC blockchain (but not the BCH blockchain) is forked yet again, this time by developers who create Bitcoin Gold ("BCG"). Since the holder had two BTC, the holder *is entitled* to two BCG.

42. As of today's date, each BCH coin has a market value of $329.55 and each BCG has a market value of $17.93.[6] At the time of Duke's misappropriation, each BCH had a market value of $1,133.48 and each BCG had a market value of $44.14.[7] Therefore, BTC holders would have a significant interest in acquiring their forks and receive the corresponding BCH and BCG.

43. To track ownership and transfers of BTC there exists a ledger, which documents and displays transactions. In order to complete a transaction with BTC one must have a digital

---

[6] *See* https://coinmarketcap.com/currencies/bitcoin-gold/ (last visited Aug. 2, 2019).
[7] *See Id.*

wallet that contains a unique "public key", used as an address of sorts, to receive BTC. Each digital wallet is also assigned a private key that is used to send BTC out of a wallet.

44. Even though holders of BTC are entitled to new BTC when it is forked, the new forked cryptocurrency does not automatically appear in the holders' digital wallet. Rather, holders must take affirmative steps to claim possession of their new forked cryptocurrency.

45. To obtain new forked BTC, the holder has to verify his or her possession of BTC at the time of the fork, and then arrange for the receipt of the new cryptocurrency by electronic transfer.

46. Plaintiff, as holder of ~23 BTC, sought to demonstrate entitlement and arrange for receipt of his ~23 BCH and ~23 BTG, among other newly forked BTC. It was for this purpose that Plaintiff reached out to Discord's chatroom.

47. Duke told Plaintiff he could help him access the ~23 BCH, ~23 BTG, and other newly forked cryptocurrencies. Duke's statements and his position as a Discord moderator convinced Plaintiff to provide Duke with access to his computer.

48. As described further below, Discord aided and abetted in or failed to take reasonable steps to prevent Duke's conversion of Plaintiff's ~23 BTC.

**DUKE AND PLAINTIFF'S EXCHANGE ON DISCORD'S CHAT**

49. Beginning on June 6, 2018, Duke privately messaged Plaintiff on Discord's messaging platform, claiming to be able to help Plaintiff receive his newly forked cryptocurrencies.

50. Plaintiff placed his trust and confidence in Duke, because he was a moderator on Discord's Premium Signals Chat, a position of authority.

51. After engaging in some discussion about whether to acquire the Bitcoin forks on Plaintiff's desktop or laptop computer, Defendant recommended that he remotely access Plaintiff's computer using a computer program called Team Viewer: "Do you have TV [TeamViewer]? That would make things much easier." *See* Exhibit 1.

52. On or about June 8, 2018, Duke contacted Plaintiff via Discord's private messenger to ask if he wanted assistance collecting a forked cryptocurrency known as Bitcoin Diamond ("BDA"). *See* Exhibit 2.

53. It was for this purpose that Duke asked Plaintiff to commence a remote-viewing session using TeamViewer. *See* Exhibit 3.

54. Duke remotely accessed Plaintiff's computer under the guise of helping Plaintiff access BDA, but instead misappropriated Plaintiff's ~23 BTC. *See Id*. Duke sent Plaintiff's ~23 BTC to his personal digital wallet address identified by the following code 1PTPwv43BrCxRoFTowmKAoGH1ksnhkKRxh. *See* Exhibit 4**.**

55. This is the very same wallet address, 1PTPwv43BrCxRoFTowmKAoGh1ksngkKRxH, that on April 23, 2018, "Duke" had used to receive payment from a Discord administrator. *See* Exhibit 5. This payment was given to Duke for referring people to one of Discord's chatroom.

56. Duke would receive payments from Discord in order to bring more people to Discord's chatrooms.

57. Upon information and belief, Duke received payments for providing services, including but limited to, recruitment, referral of members, and/or being an administrator.

58. After some brief communications with Plaintiff attempting to cover his tracks, Duke eventually terminated all further communications with Plaintiff and removed himself from Discord's Premium Signals chatroom.

### DISCORD'S NEGLIGENCE

59. After realizing he had been the victim of fraud, theft, conversion, and/or misappropriation, Plaintiff immediately contacted Discord in order to report Duke and seek assistance recovering his ~23 BTC.

60. Even though Duke was a moderator in Discord's Premium Signals chatroom, Discord did not have any information that could be used to identify or help track Duke.

61. In fact, after Plaintiff notified Discord's chatroom administrator of Duke's malfeasance, the administrator was forced to send Duke a phishing link to uncover any information about his identity and computer usage.

62. To this day, Discord has been unable to provide a name, address, IP address, or any other information regarding Duke even though he was a Discord moderator.

63. Discord apparently did not even keep information for individuals they paid to refer people to their chatrooms.

64. Discord's failure to keep or maintain proper records identifying the individuals that use their chatrooms or other services, facilitated and/or aided and abetting Duke's misappropriation of Plaintiff's ~23 BTC.

65. The desire to grow exponentially and gain more users was much more important to Discord than ensuring the safety and security of its subscribers.

66. For example, in less than a year Discord has almost quadrupled its users from 25 million to 90 million.[8]

67. This has caused Discord to publicly state through its senior officers, that positions related to security and customers are increasing to keep up with demand. *See Id*.

68. Thus, Discord was actively promoting and advertising to the public its increase in safety and security; giving its users a sense of security that Discord has hired to people to address security and safety issues.

69. In actuality, Discord has failed to implement any steps, protocols, or procedures to ferret out or eliminate criminal activity on its servers.

70. As evidenced by previous instances of criminal activity on its platform, Discord is a haven for all types of criminal activity.

71. Discord has simply failed to even implement basic structures to ensure that its users can be tracked and found if they commit criminal acts, such as what happened to the Plaintiff.

72. Discord has also failed to properly supervise, train, run background checks, or even gain basic information on the identities of moderators on Discord's platform.

73. As a result of Discord's failure to implement reasonable protocols and procedures to track and identify its users, Duke was able to use Discord's platform as a means to perpetuating this theft of Plaintiff's BTC.

74. In addition to the criminal activity discussed above, Discord has been the target of malicious attacks on its servers.[9]

75. Discord users would actually join a chatroom and seek out help to carry out one of these malicious and illegal attacks.

---

[8] https://www.polygon.com/2017/12/7/16739644/discord-100-million-users-safety (last visited Aug. 6, 2019).
[9] https://www.polygon.com/2017/7/27/16046030/discord-raiding (last visited Aug. 6, 2019).

76. However, the most mind boggling aspect of this is that all the users stress the lack of consequences or even action taken by Discord when it discovered users were carrying out these malicious and illegal attacks. *See Id*.

77. This type of *lasses faire* attitude about implementing rules, protocols, and responding to illegal activity on its own servers, emboldened Discord's users to perpetuate even more serious crimes and attacks, like the one committed against Plaintiff.

78. Ironically enough, when Discord suffered DDos attacks against its servers it enacted the help of moderators, like Duke, to solve the problem. Even publicly stating that after the moderators had gotten involved, the DDos attacks were no longer an issue for Discord's users. *See Id*.

79. Discord's moderators were tasked with troubleshooting and providing support and/or services for its users.

80. Duke, like many of Discord's moderators, was also tasked with these same kind of duties of providing troubleshooting support for Discord's users, like the Plaintiff.

81. On the date of the subject incident, Duke was responsible for providing troubleshooting, support, and/or other help to the members of Discord's Premium Signals chatroom.

82. While Duke was attempting to help Plaintiff access his bitcoin forks, Duke was acting within the course and scope of its agency with Discord.

83. As a direct and proximate result of Discord's failure to implement basic procedures, protocols, and/or requirements related to moderators or ensuring its platform is not a haven for criminals, Plaintiff has sustained legal damages.

**FIRST CLAIM FOR RELIEF**
**NEGLIGENCE**

84. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

85. Discord had a duty to know the true identify of its moderators. Discord had a duty to put in place basic procedures and security protocols to identify, track, and ascertain the identify of its moderators in case of wrongdoing.

86. Discord owed a duty to Plaintiff to put in place these procedures.

87. The conversion, misappropriation, and/or theft of Plaintiff's ~23 BTC was reasonably foreseeable, particularly in light of the prior instances of criminal and other illicit activity on Discord's platform. Especially since there have been previous instances of Discord moderators not following community guidelines or engaging in other illicit activity.

88. Discord, through its actions and/or omissions, unlawfully breached its duty to Plaintiff by failing to implement any protocols to know the true identify of moderators.

89. Discord, through its actions and/or omissions, breached its duty to Plaintiff by failing to exercising reasonable care in selecting who can be a moderator on its platform.

90. Plaintiff's ~23 BTC was misappropriated, converted, and/or stolen as a direct and proximate result of Discord's failure to exercising reasonable care adopting, implementing, and maintaining appropriate measures to know the identity of its moderators.

91. Plaintiff's ~23 BTC was misappropriated, converted, and/or stolen as a direct and proximate result of Discord's failure to exercising reasonable care adopting, implementing, and maintaining appropriate security measures to stop its platform from becoming a haven for criminal activity.

92. As a direct and proximate cause of Discord's negligence, Plaintiff suffered and continues to suffer actual legal damages.

**SECOND CLAIM FOR RELIEF**
**AIDING AND ABETTING CONVERSION**

93. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

94. Duke asserted dominion and control over Plaintiff's property by misappropriating and/or converting Plaintiff's ~23 BTC for his own personal use and benefit.

95. Discord had actual and/or constructive knowledge of Duke's misappropriation and/or conversion.

96. Discord rendered substantial assistance to Duke by ignoring its own policies and procedures, and by not implementing basic protocols to know the true identity of its moderators.

97. Discord rendered substantial assistance to Duke by allowing criminal and other illicit activity to thrive on its platform, especially such activity by its moderators.

98. As a direct and proximate cause of Discord's conduct, Plaintiff suffered and continues to suffer actual legal damages.

**THIRD CLAIM FOR RELIEF**
***RESPONDEAT SUPERIOR***

99. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

100. As described above, on or about June 8, 2018, Duke misappropriated, converted, and/or otherwise stole Plaintiff's ~23 BTC.

101. As part of his duties and responsibilities as a moderator for Discord, Duke was providing troubleshooting, support, and/or other help to the members of the Premium Signals chatroom.

102. Duke was acting within the course and scope of his employment with Discord when he misappropriated, converted, and/or otherwise stole Plaintiff's ~23 BTC under the guise of troubleshooting and helping Plaintiff gain access to forked cryptocurrency.

103. At the time of the subject incident, Discord employees were performing services which they were employed to perform, or were acting at least in part because of a desire to service its employer, Discord, and were performing certain actives reasonably incidental to their employment, or which was reasonably foreseeable and/or expected of persons similarly situated.

104. Discord was and is responsible for the negligence of its employees, moderators, staff, and/or agents, since Duke was acting within the course and scope of his employment with Discord.

105. As a direct and proximate cause of Discord's negligence, Plaintiff suffered and continues to suffer actual legal damages.

**FOURTH CLAIM FOR RELIEF**
**NEGLIGENT TRAINING AND SUPERVISION**

106. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

107. Discord owed a duty to its users, including Plaintiff, to adequately train and supervise its employees, moderators, staff, and/or agents.

108. Discord breached its duty to Plaintiff in some or all of the following ways:

i. Failing to properly supervise its employees, moderators, staff, and/or agents to prevent them from misappropriated Discord users' funds or currencies;

      ii. failing to properly train its employees, moderators, staff, and/or agents not to misappropriate Discord users' funds or currencies; and

iii. failing to stake steps to prevent its employees, moderators, staff, and/or agents from engaging in criminal activity, violating community guidelines, or otherwise not following Discord's policies.

109. As a direct and proximate cause of Discord's negligent training and supervision, Plaintiff suffered and continues to suffer actual legal damages.

**FIFTH CLAIM FOR RELIEF**
**NEGLIGENT HIRING AND RETENTION**

110. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

111. Discord owed a duty to exercise reasonable care in the hiring and selection of its employees, moderators, staff, and/or agents.

112. Discord breached its duty to Plaintiff by hiring and retaining Duke. In the exercise of ordinary care, Discord knew or should have known that Duke was unfit at the time of hiring and his employment would lead to tortious conduct by them.

113. Discord breached its duty to Plaintiff by allowing Duke to operate as a moderator on its platform and not having any information related to his true identity.

114. Discord also failed to take reasonable steps after it knew or should have known of Duke's propensity to commit criminal acts and yet continued to employ him.

115. As a direct and proximate cause of Discord's negligent hiring and retention, Plaintiff suffered and continues to suffer actual legal damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff LOGAN BACHSTEIN, respectfully prays for relief as follows:

(a) An award of any and all additional damages recoverable under law against Defendant, including but not limited to compensatory damages, punitive damages, incidental damages, and consequential damages;

(b) Pre- and post-judgment interest;

(c) Attorneys' fees, expenses, and the costs of this action; and

(d) All other and further relief as this Court deems necessary, just, and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

Dated: August 12, 2019.

Respectfully submitted,

**THE G LAW GROUP, P.A.**
*Attorneys for the Plaintiff*
350 Lincoln Road, Suite 5038
Miami Beach, FL 33139
Tel: (305) 709-8877
Fax: (786) 460-8333
sgenadiev@theglawgroup.com

By: */s/ Simeon Genadiev*
**SIMEON GENADIEV, ESQ.**
Florida Bar No.: 100918