IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| LOGAN BACHSTEIN, | ) |
| | ) |
| Plaintiff(s), | ) CIVIL ACTION NO.: 6:19-cv-1484 |
| | ) |
| v. | ) |
| | ) |
| DISCORD, INC., | ) |
| | ) |
| Defendant(s). | ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER OR, IN THE ALTERNATIVE, DISMISS
PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORADUM OF LAW**

Plaintiff, Logan Bachstein ("Plaintiff" or "Bachstein) submit this memorandum in opposition to Defendant, Discord, Inc.'s ("Defendant" or "Discord") Motion to Transfer or, in the alternative, Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law ("Defendant's Motion") (D.E. 14). Plaintiff's respectfully request 15 minutes for oral argument. For the reasons below, Defendant's motion to dismiss should be denied.

**PRELIMINARY STATEMENT**

Plaintiff is a Florida resident, and like many Florida residents was a user of the Discord platform. Sometime in 2017, Plaintiff met someone with the username, Duke, who was a moderator of Discord's Premium Signals chatroom. *See* Complaint (D.E. 1) at ¶¶ 17, 20, and 21. Because of the position afforded to him as a moderator by Discord, Plaintiff felt a certain trust and comfort when interacting with this individual. *See Id*. at ¶26. In June 2018, through the Discord chat, Plaintiff posted to the Premium Signals chatroom asking if anyone could help him gain access to forked cryptocurrency. *See Id*. at ¶24 and 28. Instead, after Duke gained access to Plaintiff's digital wallet, Duke misappropriated ~23 Bitcoins from Plaintiff. After this theft, Discord had

absolutely no information that could be used to identify Duke, who had been a Discord moderator for years.  This even though, Duke had been paid to bring more people to use Discord's platform.

Plaintiff filed suit against Defendant asserting five claims for relief: Negligence, Aiding and Abetting Conversion, *Respondeat Superior*, Negligent Training and Supervision, and Negligent Hiring and Retention.  Defendant has moved to transfer this matter to the Northern District of California, based on a forum selection clause contained in Discord's adhesion contract.  Alternatively, Defendant seeks to dismiss Plaintiff's claims alleging that it does not have sufficient minimum contacts with the State of Florida, and that Plaintiff has failed to state a claim upon which relief can be granted. For the reasons stated below, Defendant's Motion should be denied.

## **LEGAL STANDARD**

The "threshold to survive a motion to dismiss is exceedingly low." *Malibu Media, LLC v. Whaley,* No. 2:14-cv-510, 2015 WL 12852966, at *1 (M.D. Fla. May 14, 2015).  At this stage, a court must accept all factual allegations as true and construe the complaint "in the light most favorable to the plaintiff." *Id* (citation omitted).  In evaluating Defendants' motion to dismiss, the Court must accept Plaintiffs' "well-pleaded factual allegations" as true and draw all reasonable inferences in the Plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, Plaintiff's Complaint (D.E. 1) need not, "…specifically plead every element of [a] cause of action, [but] a complaint must still contain enough information regarding material elements of a cause of action to support recovery under some viable legal theory." *Cooley v. HMR of Ala., Inc.*, 747 Fed. Appx. 805, 807 (11th Cir. 2018).

# ARGUMENT

I.   **Transfer is not warranted, as Plaintiff's claim does not fall within the scope of the forum selection clause.**

In considering whether to transfer a case pursuant to 28 U.S.C. §1404(a), this Court must engage in a two-step inquiry. *See Eye Care Int'l Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1318 (M.D. Fla. 2000). First, the Court must determine whether the case can be filed in the proposed district, the Northern District of California in this case. *See Id*. Second, the Court must consider, "whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice." *Id*. In making these considerations, a trial court has broad discretion in determining whether a transfer is appropriate. *See Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). While the Supreme Court in *Atlantic Marine Constr. Co. v. U.S Dist. Ct.*, 571 U.S. 49 (2013) certainly narrowed a trial court's discretion when ruling on a motion to transfer, this only applies where the claim falls under a mandatory forum selection clause. This is simply not the case here.

The forum selection clause reads in its entirety:

> "Any claim or dispute between you and the Company ***that arises in whole or in part from these Terms or your use of the Service*** that is not subject to arbitration shall be decided exclusively by a court of competent jurisdiction located in Santa Clara County, California, and you hereby consent to, and waive all defenses of lack of personal jurisdiction and forum non conveniens with respect to venue and jurisdiction in the state and federal courts of Santa Clara County, California."
> - Declaration of Sean Li at p. 18. (D.E. 14-2) (emphasis added)

Plaintiff's claims certainly do not arise from the terms of service. As such, for Defendant's forum selection clause to be enforceable, this dispute must have arose from Plaintiff's use of "the Service." "The Service" is defined in the purported terms of service as, the discord application and the Discord website. Defendant's Motion argues that Duke's theft was "off-platform" and unforeseeable. *See* Defendant's Motion at p. 19-20. In fact, Defendant's Motion goes to great

length to make clear that this theft occurred on Duke's own time and he is certainly not an employee of Discord. However, if this were true then Plaintiff's claim cannot arise out of his use of the Discord application or website. Discord is trying to have its cake and eat it too. If Plaintiff's claims, as argued by the Discord, arose out of his use of the service then Discord certainly owed a duty to Plaintiff.

The forum selection clause contained in the terms and conditions does not even apply to Plaintiff, nor can it be enforced by Discord. Any provision of a contract must be read in the context of the surrounding sentences, the entire paragraph, and the entire document. *See, e.g., City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000) (sentences surrounding phrase in contract provide context to phrase to determine its meaning); *Cali v. Meadowbrook Lakes View Condo. Ass'n B Inc.*, 59 So. 3d 363, 367 (Fla. 4th DCA 2011) ("It is fundamental that in construing a contract, the intention of the parties must be determined from examination of the whole contract and not from the separate phrases or paragraphs."). "Any 'constructions which render a clause of the contract superfluous or without meaning' should be avoided. *See Dear v. Q Club Hotel*, 2017 U.S. Dist. Lexis 181905, *5 (S.D. Fla. 2017 Nov. 1, 2017); *quoting Veniard v. NB Holdings Corp.*, 2000 U.S. Dist. LEXIS 20518, *8 (M.D. Fla. Aug. 8, 2000). Displayed quite clearly before the forum selection clause, the terms and conditions read: "[t]he following additional terms and conditions apply with respect to any App that the Company provides to you designed for use on an Apple iOS- powered mobile device." There is nothing contained thereafter to state or make clear that the terms that follow this provision should be applied to all Discord users, and not merely those that use Apple products. Thus, the forum selection clause, which comes after this language, can only be interpreted as a term that applies only if you are using an Apple product. As Plaintiff did not use Discord through any Apple product, this forum selection clause does not

apply to him. Furthermore, Defendant's Motion does not provide any basis for why Discord should be able to apply terms of service that were, "between Hammer & Chisel Inc. and its related companies." *See* Declaration of Sean Li at p. 8.

Defendant has also not addressed any of the public and private factors that Courts in this District employ to evaluate Section 1404(a) motions. As such, Plaintiff has not addressed these issues in this response. However, none of these factors weighs even marginally in favor of transferring this case to California. Florida clearly has an interest in ensuring that its citizens are protected against torts committed within the State. *See e.g. Silvers v. Verbata*, 2017 U.S. Dist. Lexis 216293 *19 (M.D. Fla. Dec. 1, 2017) ("…Florida has an obvious interest in providing a convenient forum for its citizens to vindicate their tort claims…") Therefore, this Court should deny Defendant's Motion to Transfer.

**II.     Discord is subject to Florida's long arm statute and has sufficient minimum contacts with this forum to not offend due process.**

The Eleventh Circuit has a two-part test for personal jurisdiction. First, this Court must examine the jurisdictional issue under the State's long-arm statute. *See Seascape Phase II Ass'n v. Chem. Specialties*, 2017 U.S. Dist. Lexis 183021 (N.D. Fla. July 6, 2017). Contrary to Defendant's Motion, Plaintiff has alleged jurisdiction over Discord based on the Florida long arm statute. *See* Defendant's Motion at p. 11. The Complaint clearly states that this Court has personal jurisdiction over Discord because it committed a tortious act and caused injury to Plaintiff. *See* Complaint at ¶14. In addition to the allegations contained in the Complaint, Discord is also subject to personal jurisdiction under Florida Statute §48.193(1)(a)6a, as it is most certainly engaged in, "solicitation or service activities" within the State of Florida. The Declaration of Sean Li (D.E. 14-2) essentially concedes this point as it states that Discord's, "advertising and marketing are primarily conducted

online." *See* Declaration of Sean Li at ¶5. Mr. Li does not and cannot state that Discord does not advertise or solicit within the State of Florida, nor can he make the claim that Discord is not involved in service activities within the State. Therefore, Plaintiff has satisfied the first prong of the two-part test.

The second part of the test requires this Court to determine whether sufficient minimum contacts exists to the satisfy the Due Process Clause of the Fourteenth Amendment. *See Seascape* at *5. A defendant is subject to personal jurisdiction where it has, "purposefully availed himself of the privilege of conducting activities in the forum State, thus invoking the benefits and protections of its laws." *Consolidated Dev. Corp. v. Sherrit*, 216 F. 3d 1286, 1291 (11th Cir. 2000). In order to establish minimum contacts, it must be foreseeable that a defendant's conduct and connection with the forum state are such that it should reasonably anticipate being haled into court there. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). It's hard to imagine that Discord's connection with this State is so tenuous that it couldn't reasonably anticipate being haled into court in this forum, yet it has at least 24 servers or chatrooms with Florida tags. *See* https://disboard.org/servers/tag/florida (last visited on Oct. 10, 2019). In fact, Discord actually has a server titled "The State of Florida", which prominently displays the State flag. *See Id*. To show its specific connection and sufficient contacts with this District, Discord also has servers named "Osceola County, Florida", "City of Tampa (Training Server)", and "Manatee County, FL" to name a few. *See Id*. These are only some of the Florida linked chatrooms or servers owned by Discord that were readily accessible via a google search.

Discord has not disputed that it does market and advertise its platform and services directly to citizens of the State of Florida. Affording oneself of the privileges of the State of Florida by marketing and advertising within the state is one way Court's have determined there are sufficient

minimum contacts to satisfy due process. *See e.g. Prou v. Giarla*, 62 F. Supp. 3d 1365, 1377 (S.D. Fla. 2014) (court found that defendants substantial sales and marketing efforts through Florida were sufficient to establish minimum contacts); *Sehringer v. Big Lots*, 532 F. Supp. 2d 1335, 1348 (M.D. Fla. 2007) (marketing and control of Florida stores make it reasonable that defendant would anticipate being haled into court in Florida). It stretches the bounds of credulity to think that Discord could not have possibly considered it could be brought to Court in Florida, especially in light of the numerous legal matters that have arisen in Florida as a result of Discord's app. *See e.g.* https://www.orlandosentinel.com/news/breaking-news/os-ne-nova-high-student-makes-threat-discord-20190823-cbmfogkxuzdlhi34uie5tbhqni-story.html (last visited on Oct. 10, 2019) (high school student in Florida arrested for threatening mass shooting in Davie, FL, on Discord application); https://endsexualexploitation.org/articles/discord-gaming-app-used-to-groom-juvenile-victims/ (last visited on Oct. 10, 2019) (teen lured from LA to FL by group of traffickers using Discord app); https://www.forbes.com/sites/thomasbrewster/2019/01/29/discord-the-2-billion-gamers-paradise-coming-to-terms-with-data-thieves-child-groomers-and-fbi-investigators/#7a7516943741 (last visited on Oct. 10, 2019) (sexually exploited teenage girls in Florida were contacted on Discord by accuser). Moreover, Discord's product, its application and platform are consumed and/or used in the State of Florida. For example, a Discord user can even be seen creating music in a Florida studio by using the Discord application. *See* https://www.youtube.com/watch?v=DhCwVL2FxJ4 (last visited on Oct. 10, 2019).

This Court must also determine whether exercising personal jurisdiction would comport with fair play and substantial justice by utilizing the following five factors: "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most

efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies." *Jerry Harvey Audio Holding, LLC v. 1964 Ears, LLC,* 2016 U.S. Dist. LEXIS 189433, *11-12 (M.D. Fla. 2016). The Defendant is a multi-billion dollar company with teams of lawyers across the nation at its beck and call. To put it bluntly, there is absolutely no burden on the Defendant if this case progresses in this forum.

As stated above, Florida has a clear interest in protecting its citizens from torts. This coupled with the fact that Defendant's activities or lack thereof are making it easier and easier for criminals to prey on vulnerable Florida citizens such as Plaintiff and the individuals mentioned above. Plaintiff also clearly has a strong interest in obtaining convenient and effective relief in his home state, and would certainly be burdened much more than Defendant would if this case were transferred to California. The remaining factors are neutral. However, the strong interests of the forum state and Plaintiff outweigh any minimal impact on the Defendant if this case were to progress in this forum. Therefore, this Court should find that there is personal jurisdiction against the Defendant in this matter.

### III.  PLAINTIFF'S CLAIMS AGAINST DISCORD ARE PROPERLY PLED

Discord asserts that Plaintiff's claims are barred by the Communication Decency Act 47 U.S.C. §230(c)(1) ("CDA"), Plaintiff failed to allege a duty owed to him, and Duke is not employed by Discord.

Contrary to Defendant's assertion, Section 230(c) of the CDA does not create, "a general immunity from liability deriving from third-party content." *Barnes v. Yahoo!,* 570 F.3d 1096, 1100 (9th Cir. 2009). The fact that a website uses third-party content does not necessarily entitle it to protection under Section 230, because "to provide immunity every time a website uses data initially obtained from third parties would eviscerate" the text of the statute. *Id.* (internal citations

omitted); *see also. Airbnb, Inc. v. City & Cty. of San Francisco,* No. 16-cv-03615, 2016 WL 6599821, at *4 (N.D. Cal. Nov. 8, 2016) (Section 230 "does not provide limitless immunity for online activity or conduct related to it").

Section 230(c), titled "Protection for 'Good Samaritan' blocking and screening of offensive material," contains two related provisions. The first prevents a website from being "treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(l). The second provision states in pertinent part that:

> "No provider or user of an interactive computer service shall be held liable on account of-any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." *Id.* § 230(c)(2).

Although courts have typically interpreted this language broadly, courts are clear that Section 230 should not be interpreted to "create a lawless no-man's-land on the Internet." *Roommates.com,* 521 F.3d at 1164; *see also Almeida v. Amazon.com, Inc.,* 456 F.3d 1316, 1321-22 (11th Cir. 2006) (Section 230's protection, while "broad,". "does not apply without limitation").[2]

The "CDA statutory immunity is an affirmative defense which plaintiff is not required to negate in its Complaint." *e-ventures Worldwide, LLC v. Google, Inc.,* 188 F. Supp. 3d 1265, 1273 (M.D. Fla. 2016); *Nat'l Numismatic Certification, LLC. v. eBay, Inc.,* No. 6:08-cv-42, 2008 WL 2704404, at *24 (M.D. Fla. July 8, 2008) (same). When a pleading raises "fact-intensive" questions such as whether a defendant's "conduct disqualifies it for immunity under the CDA," it is "improper for the Court to resolve this issue on the pleadings." *Perfect 10, Inc. v. Google, Inc.,* No. 04-cv-9484, 2008 WL 4217837, at *8 (C.D. Cal. July 16, 2008). Thus, factual issues preclude a ruling on the CDA issue at this stage of the case. See, e.g., *FTC v.*

*LeanSpa, LLC*, 920 F. Supp. 2d 270, 275 (D. Conn. 2013) ("The Court cannot conclude from the face of the Amended Complaint that the LeadClick defendants are entitled to immunity under the CDA,"); *CYBERsitter, LLC v. Google Inc.*, 905 F. Supp. 2d 1080, (C.D. Cal. 2012) ("Because Defendant's entitlement to immunity under the CDA depends on whether Defendant 'developed' or materially contributed to the content of these advertisements, it is too early at this juncture to determine whether CDA immunity applies."); *Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 418 F. Supp. 2d 1142, 1145 (D. Ariz. 2005) ("Taking Plaintiff's allegations as true, Defendants are not entitled to immunity under the CDA at this stage of the case.").

All of the foregoing reasons are more than sufficient to deny the instant Motion. But even putting them aside, there is another compelling reason why the CDA does not protect Defendants here: it would be absurd to interpret Section 230 to immunize the willful facilitation of criminal activity, a result Congress could not possibly have intended when it enacted a statute intended to promote content monitoring as a way to ***protect*** the public at large. Congress had enacted Section 230 to address a contradiction that existed previously in the case law: if a website chose to monitor its site to remove offensive postings, it could face civil liability, but a website doing nothing would face no liability. *See Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1014 (Fla. 2001). Thus, website operators had an incentive to avoid all content monitoring on their sites. *See Id*. Section 230 was enacted to switch this equation by protecting websites who engage in good-faith monitoring. In keeping with this purpose, it would make no sense to immunize a website like Discord that monitors the content on its site not to protect the public, but to harm it by willfully facilitating criminal activity. If the allegations of Discord's involvement and facilitation are not sufficient to convince this Court to deny Defendant's Motion, the Plaintiff requests the opportunity to amend. At the very least,

Plaintiff should be given an opportunity to amend its complaint before it is summarily dismissed with prejudice.

Defendant's Motion also incorrectly states that Plaintiff's claims for negligence fail, because Plaintiff failed to allege a duty owed to him by Defendant. *See* Defendant's Motion at p. 17. The Complaint clearly alleges specifically what duties Discord owed to the Plaintiff. *See* Complaint at ¶¶ 85, 86, 107, and 111. Further, Defendant also incorrectly argues that Plaintiff has not pled the elements of his claim. *See* Defendant's Motion at p. 2 and 16. However, Plaintiff has specifically alleged all the requisite elements for a negligence claim: duty, breach, causation, and damages. *See* Complaint at ¶¶ 85-89, 92, 101-103, 105, and 111-115. Defendant's also states in conclusory terms that Duke is not employed by Discord. However, despite this assertion by Defendant, Plaintiff properly alleges in ¶55-57 of the Complaint that Duke received payment for referring more people to Discord's application. These allegations, when taken as true, certainly makes it plausible that a jury could find that Duke was employed in some why by Discord. Duke provided a service to Discord that resulted in their business growing, thereby enriching the company, and he was compensated for that service. This bears all the necessary hallmarks and elements of an employer-employee relationship. Thus, Defendant's Motion should be denied as Plaintiff has properly pled all counts contained in the Complaint and the CDA does not apply to Discord's actions.

## **CONCLUSION**

For the reasons stated above, Defendant's Motion should be denied.

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(b) and 7.1(a)(3)**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 14, 2019, a true and correct copy of the foregoing document has been filed using the Court's CM/ECF has been furnished via e-mail to all counsel of record for Defendant.

                Respectfully submitted,

                **THE G LAW GROUP, P.A.**
                *Attorneys for the Plaintiff*
                350 Lincoln Road, Suite 5038
                Miami Beach, FL 33139
                Tel: (305) 709-8877
                Fax: (786) 460-8333
                sgenadiev@theglawgroup.com

By: */s/ Simeon Genadiev*
    **SIMEON GENADIEV, ESQ.**
    Florida Bar No.: 100918